IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES C. HALL, *et al.,* | ) | Case No. 1:16CV2075 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., *et al.,* | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

I.      **Introduction**

Bank of New York Mellon fka The Bank of New York filed a foreclosure against plaintiffs Charles C. Hall and Laura E. Hall in Geauga County in February 2012.  On September 15, 2015, the Geauga County Court of Common Pleas issued a judgment entry and foreclosure decree against plaintiffs.  Plaintiffs' former property recently sold at a sheriff's sale and they filed this action to avoid the legal consequences of that sale.  The undersigned recommends that the unopposed motions to dismiss be GRANTED and that plaintiffs' action be DISMISSED.[1]

II.     **Background Information and Facts Accepted as True**

On February 17, 2012, Defendant, the Bank of New York Mellon, filed a foreclosure action in the Geauga County Court of Common Pleas, Case No. 12F000160, with respect to the property at issue in the present case.  Plaintiffs, through counsel, filed an answer with affirmative defenses on May 2, 2012.  A motion for summary judgment was filed in the state foreclosure

---

[1] Granting the pending motions to dismiss will resolve all of the claims plaintiffs have attempted to assert against all of the named defendants except Luis Roldan, who has not been served.  ECF Doc. No. 10.

case  on July 28, 2015.  On August 12, 2015, plaintiffs, acting *pro se*, filed a brief in opposition

to the motion for summary judgment asserting some of the same arguments they have asserted in

this action.  The state court granted summary judgment in favor of the bank.  The state court's

order stated, in relevant part:

> The Court finds BNY's Motion for Summary Judgment shall be granted.  Mr.
> Hall signed the note and both Halls signed the mortgage.  BNY was an assignee
> of the note and of mortgage before the Plaintiff filed suit.  The original note is
> possessed by BNY and it is endorsed in blank.  BNY alleged performance of all
> conditions precedent.  The Halls did not deny said alleged performance with
> specificity, so that fulfillment is deemed admitted.  Per the Foye affidavit, Halls
> defaulted and Mr. Hall owes $612,927.36.
>
> Mr. Hall lacks standing to challenge the mortgage agreement and he cannot
> represent Mrs. Hall.  Only licensed attorneys may serve a motion on behalf of
> another party.  The Halls provided no evidence that indicated an issue of material
> fact.

After the foreclosure decree was issued, the Halls moved the state court to stay execution

of the order.  On November 14, 2016, the state court confirmed the sheriff's sale and ordered

distribution of the sale proceeds.

On August 18, 2016, plaintiffs filed this case, asserting the following relevant allegations:

¶ 16.   On or about July 20, 2006, Plaintiff Charles C. Hall executed a certain Note and
the plaintiffs executed a Mortgage for their property located at 11090 River Road,
Chardon, Ohio 44024, with Defendant Countrywide.

¶ 19.   Defendant MERS attempted to assign the alleged interest of Defendant
Countrywide to BNY Trustee * * *.

¶ 23.   MERS did not have the capacity to obtain an interest, to transfer or assign any
interest and/or to foreclose, whether directly or indirectly, by advertisement as
MERS did not and does not own or have any alleged interest in the Property
and/or was not the servicing agent of the mortgage related to the underlying
indebtedness regarding the Property.

¶ 25.   The Defendants, through their respective attorneys and/or employees, prepared
the fraudulent assignment and then proceeded to file a foreclosure as set forth
below.

2

¶ 50.  No Defendant had or has the capacity to obtain a current interest, to transfer or assign any interest, whether directly or indirectly, and thus each has not right to attempt or initiate a foreclosure proceeding relative hereto.

¶ 53.  Defendants engaged in continuous and multiple unfair and deceptive trade practices, fraud, and misrepresentations that affected interstate commerce and proximately caused the herein injuries to the Plaintiffs, jointly and separately.

¶ 58.  Based upon the foregoing, the Defendants have each forever lost the ability to enforce, control or otherwise foreclose on the Property, including the right to assign or be assigned the alleged Mortgage and/or endorse the Note.

¶ 59.  Based upon Ohio and federal law, the alleged Note can be no more than a non-performing non-secured debt, if even enforceable at law.

¶ 62.  The aforementioned prior transfers, sales, assignments, securitizations, and/or otherwise were done by the Defendants, jointly and/or severally, for purposes of deception, fraud, confusing and therefore harming the Plaintiffs, jointly and severally.

¶ 63.  The alleged sale, transfer, assignment, and/or otherwise in the instant matter was and remains fraudulent, in both law and equity.

¶ 64.  The Pooling and Service Agreement applies and a securitization process occurred and is binding to all of the Defendants herein; and each Defendant breached material terms and conditions contained therein.

¶ 65.  On February 17, 2012, Defendant Bank of New York improperly and without right filed a foreclosure against the Plaintiffs, by and through Defendant Reisenfeld, in The Bank of New York Mellon v. Charles C. Hall, *et al.,* Geauga County Court of Common Pleas, Case No. 12F000160.

¶ 66.  The Plaintiffs properly, conscientiously, and fully defendant the matter throughout the proceedings.

¶ 67.  Notwithstanding the foregoing, the state court granted summary judgment against the Plaintiffs on September 15, 2015 and an unenforceable, invalid, void, voidable, and/or inequitable Decree of Foreclosure was entered thereby.

The Halls have attempted to assert ten counts in their complaint:  Count One alleged a violation of the Fair Debt Collection Practices Act ("FDCPA"), the Ohio Consumer Sales Practices Act ("CSPA") as well as other state and federal law; Count Two alleged negligence and breach of fiduciary duties; Count Three alleged a breach of contract referring to the Note and

3

Mortgage; Count Four alleged a breach of a Modification Agreement; Count Five alleged unjust

enrichment; Count Six alleged fraud and misrepresentation; Count Seven alleged intentional

infliction of emotional distress; Count Eight alleged civil conspiracy; Count Nine alleged

violation of the Ohio Corrupt Practices Act ("OCPA") and the Racketeer Influenced Corrupt

Organizations Act ("RICO"); and Count Ten requested declaratory judgment that plaintiffs were

entitled to rescind the note and/or mortgage involved in the underlying state foreclosure case.

## III.    Standard of Review

Fed. R. Civ. P. 12(b)(6) provides, in part, that "a party may assert the following defenses

by motion:  * * * (6) failure to state a claim upon which relief can be granted."  Although a

complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual

allegations, *Bell Atlantic Corp. v. Twombly,* 550 U.S.544, 555, 127 S.Ct. 1955, 167 Led. 2d 929

(2007); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7

1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do.  *Twombly,* 550 U.S. at 555; *See also Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct.

2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a

legal conclusion couched as a factual allegation").

The Supreme Court further explained the pleading requirements in *Ashcroft v. Iqbal,* 566

U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> [T]he pleading standard Rule 8 announces does not require "detailed factual
> allegations," but it demands more than an unadorned, the-defendant-unlawfully-
> harmed-me accusation.  A pleading that offers "labels and conclusions" or "a
> formulaic recitation of the elements of a cause of action will not do."  Nor does a
> complaint suffice if it tenders "naked assertion[s]" devoid of "further factual
> enhancement.  To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to relief that is

4

plausible on its face."  A claim has facial plausibility when the plaintiff alleges factual content that allows the court to draw the reasonable  inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement" but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

(internal citations omitted) *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

In ruling on a motion to dismiss, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc., v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).  The court may consider:  (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Whittiker v. Deutsche Bank Nat'l Trust Co.,* 605 F.Supp.2d 914, 924-925 (N.D. Ohio 2009).  The defendant has the burden of showing that the plaintiff has failed to state a claim for relief, *DirecTV, Inc. ,* 487 F.3d at 476 (citing *Carver v. Bunch,*  946 F.2d 451, 454, 455 (6th Cir. 1991)), and dismissal on this basis is reviewed *de novo.  Golden v. City of Columbus,* 404 F.3d 950, 958 (6th Cir. 2005).

Because plaintiffs are *pro se* litigants, their filings are more liberally construed than are pleadings drafted by lawyers.  *Spotts v. United States,* 429 F.3d 248, 250 (6th Cir. 2005).

## IV.    Motion to Dismiss Filed by MERS, Bank of America, N.A., and Countrywide Home Loans, Inc.

### A.    Arguments Presented

Defendants, Mortgage Electronic Systems, Inc. ("MERS"), Bank of America, N.A. ("BANA") and Countrywide Home Loans, Inc. ("Countrywide") filed a motion to dismiss on

December 30, 2016.[2]  Defendants argue that this court lacks jurisdiction because plaintiff's claims are barred by the *Rooker-Feldman* doctrine.  Alternatively, defendants contend that, even if the *Rooker-Feldman* doctrine does not preclude jurisdiction in federal court, plaintiff's claims are barred by the doctrine of *res judicata.*  Defendants argue that all of plaintiff's claims were raised or could have been raised in the state foreclosure action and that plaintiffs cannot raise these claims again in a subsequent lawsuit.  Finally, defendants argue that, even if the claims are not barred by *res judicata,* the claims lack merit and should be dismissed pursuant to Fed. R. Civ. P. 12(B)(6).  Defendants argue that plaintiffs' claim that their loan became unenforceable when it was securitized lacks merit and that they have no standing to enforce it.

Plaintiffs have not filed anything opposing the motion to dismiss.

**B.  Law & Analysis**

Plaintiff's complaint challenges actions taken by defendants in the Geauga County Court of Common Pleas foreclosure case.  Plaintiffs demand that the court vacate and reverse any sheriff sale, confirmation of sale, rescind the transfer of interest, declare that plaintiffs are the rightful owners of the property, enjoin defendants from seeking any future judgment on the property, etc.  Plaintiffs also seek compensatory and punitive damages for some of their claims, all which directly relate to the actions defendants took in the state court foreclosure action.

Under the *Rooker-Feldman* doctrine a federal court is barred from considering the sort of claims the Halls have filed in this case.  This court cannot sit as a court of appeals to review state-court determinations.  *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983);  *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.362 (1923).  The *Rooker-Feldman* doctrine "stands for the proposition that a

---

[2] ECF Doc. No. 15, Page ID# 153.

federal district may not hear an appeal of a case already litigated in the state court." *United States v. Owen,* 54 F.3d 271, 274 (6ᵗʰ Cir. 1995).  Rather, even a party raising a federal question must appeal a state court decision through the state system and then, if necessary, appeal directly to the United States Supreme Court. *Id.*  The doctrine applies where, as here, a case is brought by one who has lost in state court and complains of injuries caused by the state court's judgment.  A federal court cannot be asked to review and reject the judgment of the state court.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed. 2d 454 (2005).  The critical question in determining if the doctrine applies is whether the "source of injury" upon which the plaintiff bases his federal claim is a state-court judgment. *Lawrence v. Welch,* 531 F.3d 364, 368 (6ᵗʰ Cir. 2008).  "'If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.'" *Lawrence,* 531 F.3d at 368 (quoting *McCormick v. Braverman,* 451 F.3d 382, 394-95 (6ᵗʰ Cir. 2006)).

The *Rooker-Feldman* doctrine has been broadly applied to cases challenging state foreclosure judgments.  *Haller v. United States HUD,* 2012 U.S. Dist. LEXIS 95324 *17 (S.D. Ohio, July 10, 2012), citing, *Hines v. Franklin Savings & Loan,* No. 1:09cv914, 2011 U.S. Dist. LEXIS 24500 at *2 (S.D. Ohio Jan. 31, 2011).  However, the Sixth Circuit and lower courts within the Sixth Circuit have "limited application of the doctrine to instances in which the litigant only seeks to reverse or set aside the state court judgment." *Id.*  The *Rooker-Feldman* doctrine does not apply to bar review if a litigant presents "claims based on alleged violations of federal and state law that are independent of alleged deficiencies in the state-court foreclosure proceeding." *Id.*  However, the plaintiff cannot circumvent the *Rooker-Feldman* doctrine by "recasting a request for the district court to review state-court rulings as a complaint about civil

rights, due process, conspiracy, or RICO violations." *Wallis v. Fifth Third Bank,* 443 F. App'x
202, 204-05 (7th Cir. 2011).

 Plaintiffs' complaint contains only claims that are based on the underlying state
foreclosure case.  Each of the Halls' claims relates to the actions taken by defendants directly
leading up to the foreclosure action or the foreclosure decree itself.  Although plaintiffs may
have attempted to allege other claims related to defendants' actions, all of the claims ultimately
relate directly to the state court foreclosure case.  This court cannot entertain such claims.

 Plaintiffs' claims are also barred by the doctrine of *res judicata.  Res judicata* precludes
subsequent actions by the same parties based upon any claim arising out of a transaction that was
the subject matter of a previous case.  *Fort Frye Teachers Assn., OEA/NEA v. State Emp.
Relations Bd.,* 81 Ohio St.3d 392, 692 N.E.2d 140 (1998).  It also applies where a claim was not
raised, but could have litigated in the previous suit.  *Grava v. Parkman Twp.,* 73 Ohio St.3d 379,
382 (1995).  Here, plaintiffs raise many of the same arguments they made when they opposed the
motion for summary judgment in state court.  These arguments were rejected by the state court.
Moreover, the allegations that they did not raise in state court are logically related to the
foreclosure complaint and should or could have been raised as counterclaims in that case.  Thus,
the undersigned concludes that plaintiffs' claims are barred by the doctrine of *res judicata.*

 Finally, the undersigned agrees that many of the plaintiffs' allegations lack merit or any
sort of legal significance.  For example, plaintiffs' claims regarding the securitization of the loan
lack merit.  *Dauenhauer v. Bank of New York Mellon,* 562 Fed. Appx. 473, 480 (6th Cir. 2014).
Plaintiffs also lack standing to assert that claim. *Id.* Plaintiffs' claims for negligence, breach of
fiduciary duty, breach of contract, unjust enrichment, and intentional infliction of emotional
distress are founded on inadequate, conclusory allegations.  These claims should be dismissed on

that basis.  Also, plaintiffs' claim for fraud/misrepresentation fails to allege facts with the particularity required by Fed. R. Civ. P. 9(b).  *Frank v. Dana Corp.,* 547 F.3d 564, 569-570 (6th Cir. 2008).  Plaintiffs' RICO claims rely on plaintiffs' vague allegations regarding fraudulent activity and are also not alleged with the particularity required by Rule 9(b).  Dismissal of these claims would be required under the circumstances.

This court lacks jurisdiction because it cannot act as a court of appeals over the claims that plaintiffs asserted, or could have asserted, in the state court foreclosure case.  Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata.*  Plaintiffs have also failed to sufficiently allege facts which would entitle them to relief and their claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b).  For these reasons, the undersigned recommends that the unopposed motion to dismiss filed by MERS, BANA and Countrywide be GRANTED.

## V.      Motion to Dismiss Filed by Bank of New York Mellon

### A.      Arguments Presented

Defendant Bank of New York Mellon ("BNY") filed a motion to dismiss on January 9, 2017.[3]  BNY has joined in the arguments and authority set forth in the motion for summary judgment filed by MERS, BANA and Countrywide.  BNY argues that plaintiff's claims are barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata.*  BNY also cites *Dauenhauer, supra,* for the proposition that securitization does not cause a loan to be unenforceable.  In addition, BNY argues that some of the claims plaintiffs may be attempting to assert in Count One of their complaint are barred by the statute of limitations.  The FDCPA, RESPA and TILA all have statutes of limitations of three years or less.  Given that this case involves a loan that originated in 2006 and a 2012 state foreclosure case, BNY argues that any

---

[3] ECF Doc. No. 18, Page ID# 261.

claim plaintiffs assert involving those statutes is barred by the statute of limitations. BNY further argues that each of the counts in the Halls' complaint does not allege facts sufficient to state a claim for relief.

Plaintiffs have not filed anything opposing the motion to dismiss filed by BNY.

## B. Law & Analysis

The motion to dismiss filed by BNY involves the same law and analysis as the motion to dismiss filed by MERS, BANA and Countrywide. This court lacks jurisdiction because it cannot assume the role of an appeals court over the claims that plaintiffs asserted, or could have asserted, in the state court foreclosure case. Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata.* Plaintiffs have also failed to sufficiently allege facts that would entitle them to relief and their claims should be dismissed under Fed. R. Civ. P. 12(b). For these reasons, the undersigned recommends that the unopposed motion to dismiss filed by BNY be GRANTED.

## VI. Motion to Dismiss filed by Defendant Navid Paktan

### A. Arguments Presented

Defendant Navid Paktan filed a motion to dismiss on December 8, 2016.[4] The only claims that plaintiffs have attempted to assert against Defendant Paktan involve his role as a notary on an assignment of their note or mortgage. For this reason, Defendant Paktan argues that the court should apply California law related to his role as a notary. California Code of Civil Procedure § 338, provides a three year statute of limitations for claims related to notarial acts:

> (f)(1) An action against a notary public on his or her bond or in his or her official capacity except that a cause of action based on malfeasance or misfeasance is not deemed to have accrued until discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action.

---

[4] ECF Doc. No. 11, Page ID# 133.

(2)  Notwithstanding paragraph (1), an action based on malfeasance or misfeasance shall be commenced within one year from discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action or within three years from the performance of the notarial act giving rise to the action, whichever is later.

Defendant Paktan notarized an Assignment of plaintiffs' mortgage in 2011.  He contends that plaintiffs were put on notice of the notarization no later than when the foreclosure proceedings were initiated against them.  Thus, he contends that the three-year statute of limitations in California's Code of Civil Procedure bars plaintiffs' claims against him related to his notarization of the assignment of their mortgage.

Defendant Paktan further argues that plaintiff's first cause of action should also be dismissed because it fails to state a claim against him upon which relief can be granted. Defendant Paktan argues that he is not a debt collector under the FDCPA or a lender under RESPA and cannot be held liable under the allegations in Count One of plaintiffs' complaint. Similarly, Defendant Paktan argues that he cannot be held liable for any RICO violation that plaintiffs attempted to state in Count Nine.  He asserts that his only role in the facts alleged in the complaint was to notarize an Assignment.

Plaintiffs have not filed anything opposing the motion to dismiss filed by Defendant Paktan.

### B.    Law & Analysis

Plaintiffs have alleged very few facts regarding Defendant Paktan in their complaint.  The alleged facts related to Defendant Paktan are as follows:

¶8.    Upon information and belief, Defendant Navid Paktan was and/or remains a Notary Public in the State of California as an employee, agent, representative, officer and/or otherwise associated with Defendant MERS and/or another Defendant.

11

¶24.    Defendant Navid Paktan signed the "assignment" as a Notary Public in the State of California, and was and/or is actually an employee, agent, representative officer, and/or otherwise associated with Defendant MERS and/or another Defendant.

¶48.    Defendants Luis Roldan and/or Navid Paktan, by and through or on behalf of other Defendants were likely "robo-signer" of loan and mortgage instruments.

¶49.    The signatures of Defendants Luis Roldan and/or Navid Paktan may have been forged to expedite the assembly-line process outlined above even faster and/or for other improper, fraudulent, and/or otherwise unenforceable purposes or otherwise improperly prepared by, processed, and/or authenticated.

It is not necessary for the court to determine whether the California statute of limitation relied upon by Paktan bars plaintiffs' claims.  It is clear from reviewing their allegations that plaintiffs are unsure of the role that Defendant Paktan played, if any, in the assignment of their note or mortgage.  Even if Defendant Paktan could be considered a "robo-signer" as plaintiffs speculate, plaintiffs have not alleged any viable cause of action for such conduct.  Through this lawsuit, plaintiffs seek to rescind and/or invalidate the loan they took out in 2006.  The undersigned agrees with Defendant Paktan that plaintiffs have failed to state a valid claim against him.  He cannot be considered a debt collector or lender under the federal statutes referenced in plaintiffs' complaint and the vague allegations against him do not state any valid legal claim.  For this reason, the undersigned recommends that the court GRANT Defendant Paktar's unopposed motion to dismiss pursuant to Civil Rule 12(b)(6).

## VII.    Conclusion

The undersigned recommends that the court GRANT the unopposed motions to dismiss

filed by Defendants MERS, BANA, Countrywide[5], BNY[6] and Navid Paktar.[7]

Dated: March 1, 2017

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**

---

[5] ECF Doc. No. 15, Page ID# 153.
[6] ECF Doc. No. 18, Page ID# 261.
[7] ECF Doc. No. 11, Page ID# 133; granting the pending motions to dismiss will resolve all of the claims plaintiffs have attempted to assert against all of the defendants except Luis Roldan, who has not been served.  See ECF Doc. No. 10.